Filed 4/16/20; Certified for Publication 5/6/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LAMAR WALLER, | B292524 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC656016) |
| v. | |
| FCA US LLC, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Graciela Freixes, Judge.  Affirmed.

Century Law Group, Edward O. Lear and Rizza Gonzales for Plaintiff and Appellant.

Hawkins Parnell & Young and Ryan K. Marden for Defendant and Respondent.

_____

Lamar Waller appeals from a judgment in favor of FCA US LLC (FCA) in an action under the Song-Beverly Consumer Warranty Act (Civ. Code, § 1790 et seq.). A jury found in favor of FCA on Waller's claims for breach of express and implied warranties and fraudulent concealment. Those claims were based upon Waller's purchase of a 2013 Dodge Durango manufactured by FCA. The sole issue on appeal is whether the trial court abused its discretion in precluding Waller's mechanical expert, Anthony Micale, from testifying that a faulty fuel pump relay was one of the possible causes of a claimed lack of power in Waller's vehicle.

We find no error. Micale did not provide any rational explanation of how a faulty fuel pump relay could have caused the power loss that occurred in Waller's vehicle. The original fuel pump relay in Waller's vehicle was bypassed in a repair done pursuant to a recall notice. However, Waller reported that he experienced a power loss *before* that repair, and both Waller and Micale testified that the power loss persisted *after* the repair. Micale did not provide any explanation for how a problem with the fuel pump relay could have caused an intermittent power loss both before and after the repair. Moreover, he admitted several times in his deposition that the fuel pump relay was only a possible, not a probable, cause of the power loss. The trial court therefore did not abuse its discretion in excluding Micale's opinion as speculative.

## BACKGROUND

### 1.Waller's Testimony

Waller purchased his 2013 Dodge Durango in October 2013 for $38,699. Waller testified that, in about August 2015, he took the car to a dealership for servicing after the "check engine" light

2

had gone on, and after he had experienced a loss of power while driving on the freeway. During that servicing, the dealership also made a repair to the fuel pump relay pursuant to a recall notice.

After that service visit, the intermittent loss of power continued. Waller had the dealership check the vehicle again several weeks later, but the dealership reported that it could not replicate the loss of power. Waller experienced another loss of power episode about a year later, in September 2016.

## 2.    Micale's Proffered Testimony

Prior to trial, FCA moved in limine to exclude certain of Micale's opinions.[1] To explore the foundation for those opinions, the trial court permitted Micale to be questioned outside the presence of the jury pursuant to Evidence Code section 402.[2]

At the section 402 hearing, Micale testified that he drove Waller's vehicle and personally experienced a lack of power. Micale attributed the power issue to two causes. First, he testified that the fuel pump relay could have been at fault. He explained that, if the fuel pump relay fails intermittently, it can reduce fuel pressure and "thereby reduce the amount of fuel that goes into the engine." This causes a loss of power because the engine "has a starvation of fuel."

The other potential cause that Micale identified was software problems in the vehicle's "totally integrated power module" (TIPM). The TIPM "controls almost everything in the

---

[1] FCA's written motion is not part of the appellate record.

[2] Subsequent undesignated statutory references are to the Evidence Code.

3

car and it interfaces probably to everything." Micale concluded from the "totality of all the issues" affecting Waller's vehicle that defective software in the TIPM was the common cause of the problems. Those issues included burned out light bulbs and problems with the instrument panel as well as the loss of power. He attributed the loss of power to deterioration and damage to the cylinder head from overheating because the TIPM was not directing the radiator cooling fan to turn on as it should.

Micale testified that, after the repair to the fuel pump relay in Waller's vehicle in August 2015, the relay was no longer controlled by the TIPM. Micale explained that the repair involved installing a "bypass" around "the fuel pump relay that is on board the TIPM module." With respect to the role of the fuel pump relay in causing the loss of power, Micale made a distinction between the situation before and after the bypass: "The fuel pump relay has been bypassed now, so in a sense that it's because the TIPM failed the first relay that they to put in the bypass, that now there is a new relay sitting there that is not attached correctly, that—in other cases, I have seen that relay fail. Not in this case, although the evidence suggests that it is failing." When asked what evidence suggested such a failure, Micale identified only the lack of power in the vehicle.

Micale admitted that he had no evidence that the fuel pump relay was defective before it was replaced. Micale explained, "I don't have information that Mr. Waller's relay failed. I have information that Mr. Waller's relay was replaced."

FCA's counsel also questioned Micale about his deposition testimony concerning the fuel pump relay. At his deposition, Micale was asked if he had any indication that Waller "was having any symptoms of the failure of the fuel pump relay before

4

he had the recall performed." Micale testified that "there is a possibility that if the fuel pump relay were failing intermittently and rapidly, that [Waller] could be starving the engine of fuel and causing a loss of power." Micale again testified that it was "possible" that the fuel pump was failing "such that it turns the fuel pump on and off rapidly." When asked whether it was "more likely than not that a failing or intermittent fuel pump can cause a loss of power in a Chrysler vehicle," Micale said, "I would say 'possibility.' I'm not in a position to say it's more likely than not at this juncture." He reiterated several more times that it was a *possibility*, not a probability, that Waller was experiencing the symptoms of a failing fuel pump relay prior to the time he had the recall repair performed.

At the section 402 hearing, FCA's counsel asked what Micale had done since his deposition "to investigate the fuel pump relay issue causing a loss of power." Micale answered, "Nothing further—well, there is one thing that I have done. I have reviewed the pictures and I have discerned that the fuel pump relay bypass is not connected as it should have been per the recall of the fuel pump relay." Neither counsel followed up on this testimony, and Micale offered nothing further at the section 402 hearing concerning this observation.

3.    **The Trial Court's Ruling**

Following Micale's testimony, the trial court heard arguments. FCA's counsel pointed out that Micale testified there was a "workaround" for the fuel pump relay. "It's not fixed right onto the car. That is what is causing the problem. The current fuel pump relay is what is causing Mr. Waller's current loss of power, that the current fuel pump relay is outside of the TIPM." Thus, he argued that Micale actually did not attribute the power

5

loss in Waller's vehicle to "the failure of the fuel pump relay on the TIPM, and he just said that on the stand." He also pointed to Micale's deposition testimony in which Micale stated "multiple times" that it was only a "possibility" that the fuel pump relay was related to the loss of power.

Waller's counsel did not address the "workaround" that bypassed the fuel pump relay in the TIPM. Rather, he argued that Micale's testimony adequately supported the opinion that the TIPM itself was faulty. He argued that the "separate and discreet issues" that Micale identified "collectively and cumulatively point to the fact there is a TIPM issue." He summarized Micale's testimony as saying, "in a nutshell, that by looking at these individual and discrete issues, he can in totality look at that and opine that those are TIPM related."

The trial court ruled that Micale failed to establish a foundation for his opinion that the loss of engine power in Waller's vehicle was related to the fuel pump relay. The court explained that Micale was "given the opportunity to break away from the possibility opinion that he stated multiple times in his deposition, but he stuck to that opinion and reiterated that opinion over and over again. And, as you know, possibilities are irrelevant, because anything is possible. He never seized the opportunity to explain why it is probable rather than possible." The court concluded that Micale's opinion on the fuel pump relay was speculative.

## DISCUSSION

1. **Expert Opinion Based Upon Speculation Is Inadmissible**

Section 801 limits expert testimony to opinions that are related to a "subject that is sufficiently beyond common

experience that the opinion of an expert would assist the trier of fact," and that are "[b]ased on matter . . . that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates."  (§ 801, subds. (a) & (b).)  Section 802 provides that a witness, including an expert, may "state on direct examination the reasons for his opinion and the matter . . . upon which it is based, unless he is precluded by law from using such reasons or matter as a basis for his opinion."  (§ 802.)  A court may, "in its discretion . . . require that a witness before testifying in the form of an opinion be first examined concerning the matter upon which his opinion is based."  (*Ibid.*)

In *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747 (*Sargon*), our Supreme Court explained how these statutes apply to evaluating the foundation for expert opinion testimony.  Under section 801, a trial court acts as a "gatekeeper to exclude speculative or irrelevant expert opinion."  (*Id.* at p. 770.)  A trial court may exclude expert testimony if the *type* of matter on which the expert relies is unreasonable and also if the matter relied upon does not " 'provide a reasonable basis for the particular opinion offered.' " (*Ibid.*, quoting *Lockheed Litigation Cases* (2004) 115 Cal.App.4th 558, 564.)  Thus, an expert opinion may not be based on assumptions of fact that lack evidentiary support or on speculative or conjectural factors.  (*Sargon,* at p. 770.)

Section 802 also permits a trial court "to find the expert is precluded 'by law' from using the reasons or matter as a basis for the opinion."  (*Sargon, supra,* 55 Cal.4th at p. 771.)  "Law" includes decisional law, and this section therefore permits courts to place limits on an expert's "reasons."  (*Ibid.*)  Thus, a trial

7

court "may inquire into, not only the type of material on which an expert relies, but also whether that material actually supports the expert's reasoning. 'A court may conclude that there is simply too great an analytic gap between the data and the opinion offered.' " (*Ibid.,* quoting *General Electric Co. v. Joiner* (1997) 522 U.S. 136, 146.)

In *Sargon,* the court concluded that the trial court properly excluded expert testimony concerning lost profits damages as speculative. The expert in that case based his damage estimates on projected market shares far beyond what the small plaintiff company had ever achieved. (*Sargon, supra,* 55 Cal.4th at p. 776.) His projections assumed that, like much larger competitors, the plaintiff's product was innovative, but he did not provide any "evidentiary basis that equates the degree of innovativeness with the degree of difference in market share." (*Id.* at pp. 777–778.)

## 2. The Trial Court Did Not Err in Excluding Micale's Opinion Concerning the Fuel Pump Relay

We review the trial court's ruling excluding a portion of Micale's opinion testimony under the abuse of discretion standard. (*Sargon, supra,* 55 Cal.4th at p. 773.) We conclude that the court acted within its discretion in finding that Micale's opinion was speculative.

As discussed above, the record shows that there were two different time periods relevant to the fuel pump relay. The first was prior to the installation of the relay bypass in August 2015, when Waller testified that he first experienced a loss of power in his vehicle. The second was after the bypass, when both Waller and Micale testified that the loss of power continued.

8

Prior to the bypass, the fuel pump relay was controlled by the TIPM. Micale identified no evidence of a defect in the relay for that time period. He admitted that the recall notice and the installation of the bypass showed only that the relay had been replaced, not that it was defective. And, as the trial court noted, Micale admitted numerous times at his deposition that it was merely possible, not probable, that the fuel pump relay was failing prior to the bypass.

The trial court concluded that "possibilities are irrelevant, because anything is possible." The court further reasoned that "it certainly doesn't aid the jury in understanding an issue if all an expert says is that it's possible. That doesn't meet the standard for expert opinion."

The court's reasoning was sound. In *Jones v. Ortho Pharmaceutical Corp.* (1985) 163 Cal.App.3d 396, this court affirmed a nonsuit ruling where the only evidence that the defendant's drug had caused the plaintiff's precancerous condition was "conjectural and ambiguous" expert testimony that the drug "may have had some effect on the development or progression of the disease." (*Id.* at p. 402.) The court explained that "[t]here can be many possible 'causes,' indeed, an infinite number of circumstances which can produce an injury or disease. A possible cause only becomes 'probable' when, in the absence of other reasonable causal explanations, it becomes more likely than not that the injury was a result of its action. This is the outer limit of inference upon which an issue may be submitted to the jury." (*Id.* at p. 403.)

That analysis applies here. The trial court reasonably concluded that, if the jury could not rely on Micale's testimony to find that the fuel pump relay caused the loss of power in Waller's

vehicle, his testimony would not "assist the trier of fact." (§ 801, subd. (a).)

Waller argues that the possible fuel pump relay failure was only one of the manifestations of the "root cause" of a faulty TIPM. He claims that all the various manifestations, including intermittent failure of the radiator fan and other software problems, "collectively and cumulatively" caused Micale to "reach the conclusion that it was the TIPM that was defective." But that argument could logically implicate the fuel pump relay only before the relay in the TIPM was bypassed. After the bypass, the TIPM no longer controlled the fuel pump relay. And Micale did not offer any explanation for why, if the fuel pump relay in the TIPM contributed to the loss of power, the same problem persisted even after the TIPM relay was bypassed.

The trial court reasonably concluded that evidence of defects in the TIPM system as a whole did not support an opinion that the fuel pump relay might have been the *specific* cause of the loss of power: "I don't think that it's appropriate to say, well, the system is defective and therefore anything that happens relates back to the system, even if the expert can't say yes, it is probable that the issue with regards to engine—loss of engine power was attributable to the fuel pump relay or to this particular issue with the TIPM." According to Waller, the same problem of loss of power occurred both before and after the fuel pump relay in the TIPM was bypassed. This seems to rule out the TIPM fuel pump relay as the specific cause of the power loss (or at least shows it was not a but-for cause). The trial court did not preclude Micale from testifying about other potential ways in which defects in the

10

TIPM might have caused the loss of power, including overheating caused by the intermittent failure of the radiator cooling fan.[3]

The occurrence of loss of power both before and after the fuel pump relay bypass also undermines any conclusion that the bypass itself was faulty. Micale observed that the bypass was "not connected as it should have been." However, Micale did not provide any explanation for why, if the bypass was at fault, the loss of power would have occurred before the bypass was installed. Nor did he suggest any reason why, if the bypass installation was faulty, the loss of power remained only intermittent after the bypass was in place.[4]

In any event, Micale did not support his observation with any testimony about how the installation of the bypass, if faulty, could have caused the power loss. Indeed, his testimony did not show *any* connection between the bypass and the loss of power.

---

[3] Waller argues that the trial court went too far in precluding Micale from testifying at all about the fuel pump relay recall. We disagree. If there was no basis for an opinion that the original fuel pump relay in the TIPM caused the power loss, there was no relevance to Micale's testimony that it was replaced. Moreover, Micale himself testified that he had no information that the original fuel pump relay was *defective*; he knew only that it had been replaced.

[4] While it might theoretically be possible that the fuel pump relay in the TIPM malfunctioned due to TIPM problems *and* the fuel pump relay bypass also failed, Micale did not offer such a theory, much less support it with any evidence. In particular, as mentioned, Micale did not explain how a problem with the fuel pump relay bypass could cause the continuation of the same *intermittent* power failure.

11

Micale testified that "now there is a new relay sitting there that is not attached correctly, that—in other cases, I have seen that relay fail. Not in this case, although the evidence suggests that it is failing." However, the only evidence he identified was the power loss itself. Such circular reasoning is not a basis for an admissible expert opinion, especially when Micale himself offered other potential reasons for the intermittent power loss. (See *Sargon, supra,* 55 Cal.4th at p. 777 [trial court properly considered expert's circular reasoning concerning the reason for certain companies' large market share in excluding his testimony].)

Waller argues that the trial court acted inconsistently in later admitting evidence relating to FCA's knowledge of fuel pump relay issues leading to the recall. That ruling was not necessarily inconsistent with the trial court's decision to exclude Micale's testimony about the fuel pump relay. In seeking the admission of evidence showing FCA's knowledge of problems with the fuel pump relay, Waller argued that such evidence was relevant whether or not the particular relay in Waller's vehicle actually failed, because the relay posed a safety risk. Evidence of FCA's knowledge of a safety risk might have been relevant to the element of intent in Waller's fraudulent concealment claim regardless of whether Waller's fuel pump relay actually caused a problem. In any event, even if the trial court's later ruling permitting the admission of evidence of FCA's knowledge was inconsistent with its earlier ruling precluding Micale's testimony, the inconsistency favored Waller. He therefore has no ground to complain.

## DISPOSITION

The judgment is affirmed.  FCA is entitled to its costs on appeal.


LUI, P. J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.

13

Filed 5/6/20

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| LAMAR WALLER, | B292524 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC656016) |
| v. | |
| FCA US LLC, | ORDER CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Respondent. | |


THE COURT:

The opinion filed in the above-entitled matter on April 16, 2020, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports, and it is so ordered.



LUI, P. J.          ASHMANN-GERST, J.          CHAVEZ, J.